DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant Jose Meza guilty of one count of possessing criminal tools. From that judgment and the trial court's judgment denying his motion to suppress, appellant raises the following assignments of error:
 {¶ 2} "I. The judge erred by failing to suppress all evidence obtained by Trooper Romero and the drug dog because Trooper Romero's questioning of defendant was a fishing expedition which went far beyond the scope of a stop for `following too close' and Trooper Romero's admission that he had no articulable suspicion.
 {¶ 3} "II. The trial judge prejudiced this case and erred because he did not grasp the distinction between Correa and Montoya cases rulings versus the Bolding decision.
 {¶ 4} "III. The judge erred by refusing to dismiss appellant's case because the prosecutor failed to provide a copy of the tape made on the handheld video camera at the Ohio State Patrol since the prosecutor was served with an appropriate request for discovery or delaying the trial until such evidence was produced by the prosecutor. Withholding such evidence denied defendant exculpatory evidence.
 {¶ 5} "IV. The trial judge unreasonably interfered with cross-examination of the troopers who performed the arrest and investigation by repeatedly badgering defense counsel even though defense counsel was not trying to repeatedly ask the same question.
 {¶ 6} "V. The judge committed prejudicial error when he allowed Trooper Romero testify [sic] about what was said in the audio portion of the videotape.
 {¶ 7} "VI. The trial court erred when it excessively sentenced defendant to actual incarceration in light of all the facts and circumstances."
 {¶ 8} On March 31, 2003, appellant was indicted and charged with one count of possessing criminal tools. The charge arose out of a stop and search of appellant's car along the Ohio Turnpike on February 26, 2003. In the proceedings below, appellant filed a motion to suppress the evidence seized during that search on the ground that the officers who conducted the search did so without probable cause to believe that a crime had been committed. At the hearing on the motion to suppress, Officers Alejo Romero and Stacey Arnold, troopers and K-9 handlers with the Ohio State Highway Patrol testified as to the circumstances of appellant's detention, the search of his car and his arrest. Trooper Romero testified that on February 26, 2003, he was sitting in his patrol vehicle at a crossover on the Ohio Turnpike near mile post 49 in Swanton Township, Lucas County, Ohio, when he observed a white Chrysler Concord heading eastbound in the left lane. Although Romero did not have his laser on he could tell that the car was traveling in excess of the posted speed limit. As the car neared the trooper, it quickly slowed down and moved into the right hand lane, pulling in behind a semi tractor-trailer. As the car then passed the trooper, Romero noticed the distance between the car and the semi was approximately one and one-half car lengths. Romero determined that the Chrysler was following too closely to the semi and decided to initiate a traffic stop. As he pulled out of the crossover, Romero activated his in-car camera to attempt to record the traffic violation. As he did so, the Chrysler slowed down and separated from the semi, then moved back into the left hand lane and passed the semi. Although Romero was not able to capture the violation on his in-car camera, he was able to video tape the following events. Romero pulled over the Chrysler, notified the dispatcher by radio that he was initiating the traffic stop and notified the dispatcher of the Chrysler's license plate number.
 {¶ 9} Romero then approached the driver's side of the vehicle where he encountered appellant driving the car. Romero asked appellant for his driver's license, registration and social security number and asked him if he had ever had any tickets in Ohio before. All questions that he typically asks during a routine traffic stop. Because appellant had a New York driver's license and registration, Romero asked appellant if he was driving to New York. Romero testified that following too closely is a violation that he typically sees committed by people who are fatigued and he was concerned that appellant could be fatigued. Consistent with that concern, Romero also asked appellant where he was coming from. Appellant replied that he had been visiting his sister in Idaho and had been looking for a job there as he was currently laid off. All of Romero's questions were directed at determining whether appellant was fatigued and could safely drive. Romero stated that he engages a suspect in conversation to determine if the suspect is coherent, alert and awake. During that conversation, Romero noted that appellant was exceptionally nervous, that his hands shook, that he was breathing deeply and that his carotid pulse was visible as he was sitting in his vehicle. Romero then returned to his cruiser to run appellant's information. While in his cruiser, he called his partner, Trooper Stacey Arnold, also a K-9 handler, to bring her dog for a walk-around. Romero testified that it typically takes between 10 and 15 minutes to run a suspect's information. While Romero was waiting for that information, Trooper Arnold arrived with Ringo, her K-9 unit. Arnold then walked Ringo around appellant's car. When Ringo reached the trunk area of appellant's vehicle he aggressively scratched at the trunk. Ringo is trained to detect the odors associated with cocaine, marijuana, heroin, methamphetamine and their derivatives. He is not trained to detect the actual presence of those drugs. When he scratches at an area, he is alerting to the presence of one of those odors. Romero then removed appellant from his vehicle, patted him down for weapons and told him that they were going to search his vehicle.
 {¶ 10} When Romero opened appellant's trunk, he immediately noticed that it was unusually shallow. Romero testified that he had recently searched another Chrysler Concord with a similarly shallow trunk. A search of that car had uncovered a hidden compartment built underneath the trunk. He therefore suspected a similar hidden compartment under appellant's trunk. Romero also testified that appellant's trunk's interior smelled of paint and Bondo. By that time, Sergeant Laubacher had arrived on the scene to assist in the search. Laubacher drilled a hole in the floor of the trunk in an attempt to determine if any contraband was in the compartment. The officers also pulled up the carpet in the trunk in an attempt to locate an access port to the hidden compartment. Using a fiberoptic scope, the officers were able to access the compartment but did not see any contraband. They did realize, however, that the compartment was fairly large and divided into two portions because of the spare tire well. At that point, they decided to transport the vehicle to the highway patrol post to try to access the compartment. Romero's in-car camera continued to tape the search process after the car was taken to the patrol post, but ceased taping before the search was completed. No contraband was ever found in the vehicle although an access door to the hidden compartment was discovered in the right rear tire well.
 {¶ 11} Romero testified that in his 10 years of experience as a state highway patrol officer he has discovered some 20 to 25 hidden compartments in vehicles and that he has never found anything of a legitimate nature in these types of compartments. In particular, Romero stated that he has found drugs, currency and weapons in such compartments. He further stated that it was not unusual for such a compartment to be empty. Trooper Arnold also testified that she has never known such compartments to be used for legitimate purposes.
 {¶ 12} On May 20, 2003, the lower court issued an opinion and judgment entry denying appellant's motion to suppress. Specifically, the court held that the troopers had probable cause to believe that a traffic violation had occurred and so had the authority to stop appellant's vehicle for purposes of enforcing the traffic laws; that the scope and duration of the stop did not exceed what was necessary to complete the purpose for which the stop was made prior to the time that the troopers observed additional circumstances giving rise to a reasonable suspicion of some other illegal activity; that Ringo gave the officers probable cause to believe that appellant's vehicle contained narcotics or at least the residue of narcotics; and that the search and seizure of appellant's vehicle was not extreme or unusual and was justified under the circumstances. Accordingly, the court found that the evidence seized during the search of appellant's car would not be suppressed.
 {¶ 13} On June 30, 2003, the case proceeded to a jury trial at which, again, Troopers Alejo Romero and Stacey Arnold testified. Before the court began the voir dire process, the state moved to amend the indictment to include language from R.C. 2923.24(C), making the offense a felony of the fifth degree. Although the indictment had originally stated that it was charging a fifth degree felony, it did not include language specific to R.C. 2923.24(C). The court granted the motion over the objection of appellant's counsel. In addition, appellant's counsel moved to dismiss the charges on the ground that he had not been provided with a copy of a video recording taken of the search of appellant's vehicle. Appellant asserted that the video recording from Trooper Romero's patrol unit showed another officer videotaping the search of appellant's car after the car was brought to the patrol post and that despite a discovery request filed some months before, appellant had never received a copy of that tape. Appellant's counsel further admitted, however, that he had only informed the state of his request that morning. In response, the state indicated that it had no knowledge of a second tape and that the only tape it intended to use at trial was the tape from Romero's in-car camera. The state further proffered a copy of a letter from Prosecutor Peterman to appellant's counsel, dated April 24, 2003, directing counsel to pick up a copy of the tape of the stop and search of appellant's car. The state therefore argued that upon seeing that tape, appellant's counsel was on notice of the potential existence of a second tape. Nevertheless, appellant asserted that the second tape may have included exculpatory evidence which had not been made available to him and since the evidence was requested and not provided, he asked that the case be dismissed. The court denied the motion.
 {¶ 14} At the trial below, Troopers Romero and Arnold testified regarding the search of appellant's car and the discovery of the hidden compartment. Their trial testimony was consistent with their testimony at the hearing on the motion to suppress. In addition, Romero testified that upon investigating appellant's license and registration, he determined that appellant was the owner of the car that he was driving and that contained the hidden compartment. Romero further stated that a search of appellant's car revealed very little clothing, no toiletries, and a receipt dated February 18, 2003 from a gas station in Peekskill, New York. Romero testified that this evidence all was inconsistent with appellant's story that he was returning from a week-long trip to Idaho. In addition, new plastic push bolts that are frequently used to secure carpeting in the trunk of a vehicle were found in the front seat ash tray of the car, tool marks were found on the inside of the trunk and the bolts that held the bumper, weld marks were found under the car in the tire well, and screwdrivers and wrenches were found in the trunk. At the patrol post, the officers searching the vehicle determined that a trunk floor had been placed on top of the car's trunk, welded in place with supports and then secured with Bondo and paint around the edges. Based on his education, training and experience, Romero testified that the compartment in appellant's car could have held more than two pounds of marijuana, more than one gram of powder cocaine, any quantity of crack cocaine, more than one gram of heroin, or more than ten unit doses or thirty grams of methamphetamine. Finally, Romero testified that after appellant's car was brought to the patrol post, he walked his own K-9 unit, Hans, around the car. As with Ringo, Hans immediately alerted to the trunk area of the car. He then tried to crawl underneath the car, then backed out, continued walking around the car and scratched at the rear seam of the trunk. Hans, too, is trained to alert to the odors of marijuana, cocaine, heroin, methamphetamine and their derivatives.
 {¶ 15} At the conclusion of the state's case, appellant moved for an acquittal, which motion was denied. Thereafter, the jury returned a verdict of guilty on the charge of possession of criminal tools and further found that the circumstances did indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony. The court subsequently sentenced appellant to three years of direct community control with a number of conditions, including that appellant be committed to the Corrections Center of Northwest Ohio with no violations for a period of 90 days. It is from that judgment and the court's ruling on his motion to suppress that appellant now appeals.
 {¶ 16} Appellant's first and second assignments of error both challenge the lower court's ruling on his motion to suppress and will be addressed together. Appellant contends that the lower court erred in denying his motion to suppress because Trooper Romero's questioning of him became a fishing expedition for an indication of criminal activity. Appellant further asserts that the lower court failed to grasp the distinction between the cases of State v. Bolding (May 28, 1999), 6th Dist. No. E-97-115, and State v. Montoya and Hernandez (Mar. 6, 1998), 6th Dist. No. L-97-1226, and erred in failing to follow the Montoya case and granting the motion to suppress.
 {¶ 17} We begin our review of the motion to suppress ruling by setting forth the applicable standard of review. Review of a ruling on a motion to suppress involves a mixed question of law and fact. United States v.McConney (C.A.9, 1984), 728 F.2d 1195. The trial court acts as the trier of fact; therefore, that court alone weighs the evidence and determines the credibility of the witnesses. The reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Brooks (1996), 75 Ohio St.3d 148, 154. Having accepted the facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts met the appropriate legal standard. Statev. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 18} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures, even when operating a motor vehicle. A seizure occurs when police restrain an individual's freedom for an investigatory stop, even if it is only a brief detention short of a traditional arrest. Terry v. Ohio (1968), 392 U.S. 1, 21;State v. Andrews (1991), 57 Ohio St.3d 86, 87. A police officer may reasonably conduct an investigatory stop of an individual if the officer can point to specific and articulable facts which, under the totality of the circumstances, warrant a reasonable belief that criminal behavior has occurred or is imminent. Id. "* * * [W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." Dayton v.Erickson (1996), 76 Ohio St.3d 3, 11-12.
 {¶ 19} Trooper Romero testified at the hearing below that he stopped appellant after he determined that appellant was driving too closely to the semi. Following another vehicle at an unsafe distance is an offense under R.C. 4511.34. Romero estimated the distance between appellant's car and the semi to be one and one-half car lengths and testified that as a general rule a driver should travel approximately one car length for every ten miles per hour of speed to maintain a safe distance from the vehicle in front of him. Romero therefore had probable cause to believe that a traffic violation had occurred and probable cause to make the traffic stop.
 {¶ 20} Appellant asserts, however, that Romero's questioning of him exceeded the scope of the initial detention and, therefore, amounted to a fishing expedition for evidence of another crime. The scope and duration of an investigative stop must not exceed what is necessary to complete the purpose for which the initial stop was made. Florida v. Royer
(1983), 460 U.S. 491, 500; State v. Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus; State v. Chatton (1984), 11 Ohio St.3d 59,63. "In conducting an investigative traffic stop, an officer may detain a motorist for a period of time sufficient to run a computer check on his license, registration, and vehicle plates and to issue him a warning or a citation." State v. Rusnak (1997), 120 Ohio App.3d 24, 27, citingDelaware v. Prouse (1979), 440 U.S. 648, 659. An officer, however, cannot use the lawfulness of an initial stop to conduct a fishing expedition for evidence of another crime. State v. Montoya and Hernandez, supra. Whether or not a detention is reasonable depends upon the totality of the circumstances and the facts of each case. State v. Bobo (1988),37 Ohio St.3d 177, 178.
 {¶ 21} In the present case, Trooper Romero's questions posed to appellant were directed toward determining whether appellant was fatigued. Romero testified that in his many years of experience as a State Highway Patrol trooper, the offense of following too closely is often committed by fatigued drivers and that he engaged appellant in a conversation to determine if he was coherent, alert and awake. The trial court found Romero's testimony to be credible and so must we. Then, while Romero was running appellant's driver's license and registration, he called Trooper Arnold to bring her K-9 unit to conduct a walk-around of appellant's vehicle. Arnold arrived approximately two minutes later. It is well-established that "[i]f a vehicle is lawfully detained, the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the United States Constitution. State v. Carlson [(1995)], 102 Ohio App.3d [585,] 594 * * *; State v. Riley (1993), 88 Ohio App.3d 468, 476 * * *. Ohio courts have held that police need not have a reasonable suspicion of drug-related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff." Rusnak, supra at 28 (citations omitted.) Moreover, this court has previously found canine sniffs to be lawful when conducted while an officer is waiting to receive license and registration information. See Rusnak, supra; State v. Green (May 14, 1999), 6th Dist. No. WD-98-068; State v. Evans (Oct. 13, 2000), 6th Dist. No. E-99-065. Under the totality of the circumstances, we conclude that the trial court did not err in denying appellant's motion to suppress and the first and second assignments of error are not welltaken.
 {¶ 22} Appellant's third assignment of error challenges the trial court's denial of his motion to dismiss the case for the prosecutor's failure to provide him with potentially exculpatory evidence. This assignment of error addresses the motion to dismiss that appellant made at the start of his trial. Appellant asserted that the video recording from Trooper Romero's police cruiser showed that a second video recording was made of the search of his car after the car had been brought to the patrol post. The state denied any knowledge of a second tape. The court denied appellant's motion to dismiss but also ruled that if such a tape did exist the state could not use it in evidence.
 {¶ 23} Criminal discovery is governed by Crim.R. 16, within the confines of Brady v. Maryland (1962), 373 U.S. 83, and its progeny. Crim.R. 16(B)(1)(f) provides in pertinent part: "Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to defendant and material either to guilt or punishment." In State v. Johnston (1988), 39 Ohio St.3d 48, the Supreme Court of Ohio, following Brady and United States v. Bagley
(1984), 473 U.S. 667, held at paragraphs four and five of the syllabus:
 {¶ 24} "4. The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. * * *
 {¶ 25} "5. In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense. * * *"
 {¶ 26} In Bagley, supra at 683, the court noted:
 {¶ 27} "The reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response."
 {¶ 28} Initially we note that it is not even clear that a second video tape recording of the search of appellant's car exists. Although the tape which was the subject of the motion to suppress reveals that an officer began to videotape the search of the car at the patrol post, the officer then dropped the camera to his side and walked away. Moreover, still photographs were taken of the search of the car at the patrol post. Those photos were admitted into evidence at the trial below. Appellant has not asserted what could possibly be exculpatory about the second video, how it could be favorable to him, or that it differs from the still photos.
 {¶ 29} Given the totality of the circumstances, we cannot say that there was a reasonable probability that the outcome of the trial would have been different had the alleged second video tape been made available to appellant prior to or during the trial. The third assignment of error is not well-taken.
 {¶ 30} In his fourth assignment of error, appellant asserts that the trial judge's treatment of his trial counsel during the hearing on the motion to suppress and the trial demonstrated a hostile feeling and spirit of ill-will which prejudiced appellant's rights to due process. Appellant cites numerous instances in which the trial judge made demeaning and unprofessional comments toward his trial counsel. The trial judge's ill treatment of appellant's trial counsel occurred primarily at the hearing on the motion to suppress, although the judge did address counsel in a similar tone at the beginning of the trial outside of the hearing of the jury.
 {¶ 31} If a litigant believes that the trial judge is biased or prejudiced toward him or his counsel at any stage of the proceedings in the common pleas court, his remedy is file an affidavit of interest, bias, prejudice or disqualification with the clerk of the Ohio Supreme Court. R.C. 2701.03. R.C. 2701.03 provides the exclusive means by which a litigant may claim that a common pleas judge is biased or prejudiced.Berdyck v. Shinde (1998), 128 Ohio App.3d 68, 81; Jones v.Billingham (1995), 105 Ohio App.3d 8, 11. Only the Chief Justice of the Ohio Supreme Court or his designee has the authority to pass upon the disqualification of a common pleas court judge. Beer v. Griffith (1978),54 Ohio St.2d 440, 441; State v. Dougherty (1994), 99 Ohio App.3d 265,268-269. Thus, a court of appeals is without authority to render a decision as to disqualification or to void a trial court's judgment on the basis of alleged bias. Beer, supra at 441-442; Dougherty, supra at 269. Accordingly, we are without jurisdiction to address this issue and appellant's fourth assignment of error is not well-taken.
 {¶ 32} In his fifth assignment of error, appellant asserts that the trial court erred in allowing Trooper Romero to testify as to the content of his conversations with appellant during the times when the microphone, which recorded the stop, search and seizure of appellant's car, cut off. Appellant contends that Romero intentionally turned off his microphone at various times during the stop. At the trial below, appellant objected to this testimony on the ground that it was hearsay. The court overruled the objection.
 {¶ 33} Questions regarding the admissibility of evidence are left to the sound discretion of the trial court and will not be reversed on appeal absent a showing of an abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A statement is not hearsay, however, if it is "offered against a party and is * * * his own statement, in either his individual or a representative capacity[.]" Evid.R. 801(D)(2). When statements are clearly a defendant's own statements, they are admissible. State v. Byrd (1987), 32 Ohio St.3d 79, 89. If testimony is offered by the state concerning the defendant's prior statements, it is not hearsay by definition. State v. Flors (1987), 38 Ohio App.3d 133,137.
 {¶ 34} Initially we note that the video/audio recording of the stop of appellant's car which was taken from Trooper Romero's police cruiser does not support appellant's allegation that Romero intentionally turned off his microphone at any time during the stop. Rather, the video tape appears to show the sound recording cutting out when Romero leans over or bends over, suggesting a technical problem with the equipment. At the trial below, Romero explained that the microphone works on an external battery and that when the battery starts to get low the microphone cuts in and out. Regardless, there is simply no evidence that the microphone was intentionally manipulated to create the sound problem. Moreover, we note that when the microphone cut out it did so for only seconds at a time.
 {¶ 35} As to appellant's hearsay argument, Romero testified that in response to his questions regarding appellant's travel, "He [appellant] stated he was coming from Idaho and headed back over to New York. He had been in Idaho for approximately a week where he had been visiting his sister and looking for work because he was currently laid off from his current employment in New York." Clearly, this is not hearsay as it was appellant's own statement offered against him. Moreover, a good portion of appellant's statements to Romero regarding his travel plans can be heard on the audio portion of the recording.
 {¶ 36} Appellant also argues that permitting the jury to hear the tape and then allowing Romero to testify about what was on the tape had the effect of reinforcing the message that the state wanted the jury to hear. Appellant did not raise this issue at the trial below and so he has waived it for purposes of appeal.
 {¶ 37} Accordingly, the trial court did not abuse its discretion in allowing Romero to testify as he did and the fifth assignment of error is not well-taken.
 {¶ 38} Finally, appellant's sixth assignment of error challenges his sentence as excessive. Appellant was convicted of possessing criminal tools, a fifth degree felony. He was therefore subject to a term of imprisonment of six, seven, eight, nine, ten, eleven or twelve months. R.C. 2929.14(A)(5). Appellant was ordered to serve three years of community control with certain conditions, including that he be committed to the Corrections Center of Northwest Ohio with no violations for a period of 90 days. Appellant does not challenge his sentence pursuant to any of the grounds listed in R.C. 2953.08(A). Rather, he simply states that his sentence was excessive and that the lower court imposed a "trial tax" upon him to punish him for exercising his right to a fair trial. Accordingly, his sixth assignment of error is not well-taken.
 {¶ 39} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal pursuant to App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Singer, P.J. Concur.