The STATE of Ohio, Appellee,

v.

BROWN, Appellant.

[Cite as *State v. Brown,* 183 Ohio App.3d 337, 2009-Ohio-3804.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–07–077.

Decided July 31, 2009.

338

Paul A. Dobson, Wood County Prosecuting Attorney, and Gwen Howe–Gebers and Jacqueline M. Kirian, Assistant Prosecuting Attorneys, for appellee.

William F. Hayes, for appellant.

---

SINGER, Judge.

{¶ 1} Appellant, Jeremy Brown, appeals from his conviction and sentence for trafficking marijuana and possession of marijuana in the Wood County Court of Common Pleas. Appellant sets forth the following assignments of error:

{¶ 2} "I. The trial court erred to the prejudice of defendant/appellant in failing to suppress the observations of, and evidence obtained by, police as a result of the unconstitutional stop of the appellant's vehicle. The stop was unconstitutional as the office[r] did not have a reasonable, articulable basis to stop the vehicle under the Fourth Amendment rights under the United States Constitution and Article 1 Section 14 of the Ohio Constitution.

{¶ 3} "II. The trial court erred in denying defendant/appellant's motion to suppress inasmuch as defendant/appellant was unreasonably detained by investigating authorities when it was clear to the investigating officers, upon initially stopping the defendant/appellant that no crime had occurred and that there was no other legitimate reason to detain defendant/appellant.

{¶ 4} "III. The offences [sic] charged in the indictment and to which the defendant was found guilty were allied offenses of similar import and the sentences should have been merged pursuant to O.R.C. 2941.25."

{¶ 5} In his first assignment of error, appellant claims that the trial court committed prejudicial error in failing to suppress all evidence obtained as a result of the unconstitutional stop of appellant's vehicle.

{¶ 6} A suppression hearing in this case commenced on June 8, 2007. Sergeant John M. Gazarek of the Perrysburg Township Police Department testified that at approximately 8:00 p.m. on March 29, 2007, he was parked at a median on I–75 when he observed and decided to follow a blue Dodge Grand Caravan with Texas tags traveling north. Sergeant Gazarek testified that he became suspicious of this vehicle upon viewing the driver, a white female, staring straight ahead and driving with her hands placed on the steering wheel in the eight and four position, even though he repeatedly testified that driving in this manner is safe and consistent with what is taught in a driver's education course. Gazarek

testified that when he caught up to the vehicle, he ran the vehicle's tag and discovered the vehicle had been rented in Texas. He also noticed that there were two children seated in the back. Gazarek testified that he then sped up to pass the vehicle, but when he pulled up alongside the driver he viewed the appellant, a black male, for the first time and noticed that they were both staring straight ahead. Gazarek testified that he found this behavior suspicious so he reduced his speed and followed them.

{¶ 7} Gazarek observed that the vehicle traveled in the far right lane at a speed of 60 m.p.h. in a 65 m.p.h. zone for approximately the first two miles, and then reduced its speed upon approaching the rear of a semi tractor-trailer. Gazarek testified that the semi was traveling at a speed of approximately 55 m.p.h., and that he was following the vehicle in the center lane at a speed of 60 m.p.h. The vehicle traveled behind the semi for approximately three miles. When the vehicle attempted to change lanes, Gazarek initiated the stop. Gazarek testified that the vehicle was traveling one-and-one-half car lengths behind the semi, and he stopped the vehicle for following too closely in violation of R.C. 4511.34. Gazarek testified that based on his training and experience, he has learned that following too closely is a common precursor to traffic accidents.

■ {¶ 8} In reviewing a motion to suppress "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Montoya* (Mar. 6, 1998), 6th Dist. No. L–97–1226, 1998 WL 114325, citing *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. "[T]he appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard." Id., citing *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.

■ {¶ 9} The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *State v. Meza,* 6th Dist. No. L–03–1223, 2005-Ohio-1221, 2005 WL 635028, ¶ 18. "A seizure occurs when police restrain an individual's freedom for an investigatory stop, even if it is only a brief detention short of a traditional arrest." Id., citing *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. "A police officer may reasonably conduct an investigatory stop of an individual if the officer can point to specific and articulable facts which, under the totality of the circumstances, warrant a reasonable belief that criminal behavior has occurred or is imminent." *Meza* at ¶ 18.

{¶ 10} The Supreme Court of Ohio has set out a standard for determining when a stop is constitutional. With respect to the issue of pretext stops, recent case law has held that a stop and detention is not unreasonable under the Fourth

Amendment when a police officer has probable cause to believe that a traffic violation has occurred, even though the officer was motivated to make the stop by a belief that the violator might be engaged in other, more serious criminal activity. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091; *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89.

{¶ 11} Here, Gazarek stopped appellant after he determined that appellant's vehicle was following too closely to the semi, a traffic offense under R.C. 4511.34. Gazarek estimated the distance between the two vehicles to be one and one-half car lengths, and testified in the court below that as a general rule a driver should travel approximately one car length for every ten miles per hour of speed to maintain a safe distance from the vehicle in front of him. Therefore, we must conclude that Gazarek had probable cause to believe that a traffic violation had occurred and probable cause to make the traffic stop.

{¶ 12} Accordingly, we find that the trial court properly denied the motion to suppress on the basis that the stop was unconstitutional. Therefore, appellant's first assignment of error is not well taken.

{¶ 13} In his second assignment of error, appellant asserts that the trial court committed prejudicial error in failing to suppress all evidence obtained as a result of the unreasonable detainment of appellant. We agree.

{¶ 14} Gazarek testified that when he approached the vehicle, he asked the driver for her license and removed her from the vehicle. Standing at the rear of the vehicle, Gazarek asked the driver where she and her passenger were going and the reason for their trip. Gazarek then approached the passenger side of the vehicle, requested identification from appellant, and asked him the same questions that he had asked the driver. The driver and appellant both stated the reason for their trip to Detroit as the death of appellant's mother. However, Gazarek became more suspicious upon comparing the following answers: the driver stated that appellant's mother had passed away the week before and they were returning to Texas on Saturday, while appellant stated that his mother had passed away a couple of days prior and the funeral was either on Saturday or Sunday and they would be returning to Texas after the funeral. Gazarek questioned appellant further on this subject and then asked appellant if there were any weapons, narcotics, or large sums of money in the vehicle. Appellant answered in the negative, stating that they were carrying only travel money.

{¶ 15} Approximately five to ten minutes after Gazarek initiated the stop, he returned to the rear of the vehicle and asked the driver to wait inside his patrol car. There, he began running checks on the driver's license and appellant's identification card and continued to question the driver about the answers given by her and appellant regarding the dates of appellant's mother's death and

funeral. Gazarek also asked the driver if there were any narcotics or large sums of money in the vehicle.

{¶ 16} While waiting for the checks to come back, Gazarek asked appellant, "Do you mind if I search your car?" to which appellant responded, "Yes." Gazarek assumed that this response meant that appellant gave him consent to search the vehicle. There were two other officers at the scene while Gazarek searched the vehicle. Gazarek had 136 hours of drug-interdiction training at the time of the search. The following items were found in the vehicle: $4,000 (in a purse) and several rubber bands, which Sergeant Gazarek testified are consistent with drug trafficking. In addition, Gazarek smelled raw marijuana in the vehicle. Another officer on the scene identified the odor as "something mixed with fabric softener sheets." Fabric softener has been known to be used by drug traffickers to cover the odor of marijuana. *State v. Gonzales,* 6th Dist. No. WD–07–060, 2009-Ohio-168, 2009 WL 105636, ¶ 25.

{¶ 17} During the search, the checks on the driver and appellant came back with no outstanding warrants. Gazarek requested the K–9 unit and placed appellant in one of the other officer's patrol cars. The officer with the canine arrived approximately 19 minutes later, as Sergeant Gazarek was filling out the traffic warning for following too closely. The canine was walked around the vehicle and alerted to the presence of narcotics almost immediately. Marijuana was found in a compartment in the floor underneath the seating areas.

{¶ 18} "[T]he scope of a detention 'must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop.'" *State v. Gonyou* (1995), 108 Ohio App.3d 369, 372, 670 N.E.2d 1040, quoting *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229. "The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." Id., quoting *State v. Smotherman* (July 29, 1994), 6th Dist. No. 93WD082, 1994 WL 395128, citing *State v. Bevan* (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099.

{¶ 19} This court has identified "[v]arious activities, including following a script, prolonging a traffic stop in order to 'fish' for evidence, separating an individual from his car and engaging in 'casual conversation' in order to observe 'body language' and 'nervousness' [that it has] deemed (depending on the overall facts of the case) to be manipulative practices which are beyond the scope of, '* * * the fulfillment of the purpose for which the stop was made.'" Id., quoting *State v. Correa* (1995), 108 Ohio App.3d 362, 368, 670 N.E.2d 1035; see also *State v. Smotherman* (July 29, 1994), 6th Dist. No. 93WD082, 1994 WL 395128.

{¶ 20} Here, when [Gazarek] asked questions irrelevant to the original purpose of the stop, he was "expanding the investigative scope of the detention." Id.

Why appellant was going to Detroit, the date of his mother's death, when he planned to return home, and whether there were drugs or large amounts of cash in the vehicle were not relevant to whether there had been a violation of R.C. 4511.34.

{¶ 21} This court allowed a similar line of questioning in *State v. Meza,* 6th Dist. No. L–03–1223, 2005-Ohio-1221, 2005 WL 635028, ¶ 9, 21, but in that case, the officer's purpose in engaging the driver in conversation and asking where the driver was headed was to determine how long the driver had been on the road and if the driver was too fatigued to drive. See also *State v. Kazazi,* 6th Dist. No. WD–03–035, 2004-Ohio-4147, 2004 WL 1765404, ¶ 3. There is no evidence that there was a permissible purpose for this line of questioning in this case. In fact, it seems clear that by separating the driver and appellant and then asking them both the same questions, Gazarek was fishing for answers that would raise suspicion. Gazarek's suspicions were based only on appellant's and the driver's answers to his impermissible questions. Furthermore, the answers given to the officer's questions regarding the purpose of the trip were not very different from each other, and certainly not so different as to raise suspicion. (Given the fact that Gazarek finds safe driving to be suspicious, he may also have found it suspicious if they had given him identical answers.)

■ {¶ 22} "When conducting the stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped." *State v. Beltran,* 12th Dist. No. CA2004–11–015, 2005-Ohio-4194, 2005 WL 1939768, ¶ 16, citing *State v. Bolden,* 12th Dist. No. CA2003–03–007, 2004-Ohio-184, 2004 WL 77617, ¶ 17. "This time period includes the time necessary to run a computer check on the driver's license, registration, and vehicle plates." Id.; see also *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.

{¶ 23} Here, Gazarek did not initiate the checks on the driver or appellant until five to ten minutes after the stop. A review of this court's prior cases indicates that an officer should, on average, have completed the necessary checks and be ready to issue a traffic citation in approximately 15 minutes. See *State v. Johnson,* 6th Dist. No. L–06–1035, 2007-Ohio-3961, 2007 WL 2216951, ¶ 10; see also *State v. Meza,* 6th Dist. No. L–03–1223, 2005-Ohio-1221, 2005 WL 635028, ¶ 9. We are convinced that by impermissibly questioning both the driver and appellant, the length of the stop was prolonged.

{¶ 24} We find that the tactics used in this case impermissibly expanded the length and the scope of the investigative stop and violated the Fourth Amendment to the Constitution of the United States and Section 14, Article I of the Ohio Constitution. Thus, the trial court erred in failing to suppress the evidence

344

that was the result of the subsequent search. Accordingly, appellant's second assignment of error is well taken.

{¶ 25} Accordingly, appellant's third assignment of error is rendered moot.

{¶ 26} On consideration whereof, this court reverses the judgment of the Wood County Court of Common Pleas. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

HANDWORK and OSOWIK, JJ., concur.