[Cite as *State v. Macon*, 2012-Ohio-1828.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96618**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GARY MACON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-534303

**BEFORE:** Sweeney, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** April 26, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein, Esq.
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Gregory Mussman, Esq.
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶1} Defendant-appellant Gary Macon ("defendant") appeals his rape, kidnapping, and gross sexual imposition convictions and his accompanying prison sentence of life without the possibility of parole. After reviewing the facts of the case and pertinent law, we affirm.

{¶2} On March 11, 2010, defendant was indicted for various offenses relating to the alleged sexual molestation of N.P. The abuse was alleged to have occurred between March 1, 2007 and May 31, 2008, when N.P. was eight and nine years old. On March 3, 2011, after a bench trial, defendant was found guilty of one count each of rape of a child under 13 years old, gross sexual imposition, and kidnapping. The court sentenced defendant to mandatory life in prison without the possibility of parole.

{¶3} Defendant appeals and raises three assignments of error for our review.

{¶4} I. "The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction."

{¶5} II. "Appellant's convictions are against the manifest weight of the evidence."

{¶6} Specifically, defendant argues that his convictions are not supported by sufficient evidence because N.P.'s testimony contains inconsistencies and there was no physical evidence against him. Defendant argues that his convictions are against the manifest weight of the evidence because N.P. testified inconsistently and she had a troubled history, including being previously abused and lying to social workers.

{¶7} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶8} To warrant reversal of a verdict under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.*

{¶9} In the instant case, defendant was convicted of rape in violation of R.C. 2907.02(A)(1)(b), which states that "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age"; kidnapping in violation of R.C. 2905.01(A)(4), which states that "[n]o person * * * in the case of a victim under the age of thirteen * * * shall * * * restrain the liberty of the other person * * * [t]o engage in sexual activity"; and gross sexual imposition in violation of R.C. 2907.05(A)(4), which states that "[n]o person shall have sexual contact with another * * * when * * * [t]he other person * * * is less than thirteen years of age * * *."

{¶10} The following evidence was presented at trial:

{¶11} N.P. testified that when she was nine years old she lived with her mother, her stepfather, and her brother at the Wilson Apartments in Cleveland. During this time, N.P. was sexually abused by her mother, her stepfather, and defendant, who was her stepfather's friend. N.P. testified that defendant touched her chest with his hands and "penalized" her by penetrating her

vaginal area with his penis. Although N.P.'s testimony about how many times the abuse occurred is somewhat confusing, N.P. recalled in detail one incident when she was hooking up the PlayStation in the bedroom and defendant walked in. Defendant asked if they could play a "game," pulled his pants downs, and threw N.P. on the bed. Defendant had intercourse with N.P., and she "completely blacked out" and "went to a whole other world." Asked if she felt she could "get up and leave the bedroom," N.P. replied, "No."

{¶12} N.P. described watching pornographic movies with her stepfather and defendant, while the two men masturbated. N.P. first testified that this went on for approximately two minutes. However, she also testified that this lasted for 15-20 minutes. N.P. explained the discrepancy by testifying that she was scared when she said two minutes, and the truth was she was in the room watching her stepfather and defendant for 15 minutes.

{¶13} On cross-examination, N.P. testified about first reporting the molestation allegations. She could not remember whether she first told her foster mother, a social worker, or the prosecutor, and she could not recall the exact time frame. N.P. testified that when she was in foster care she would often "cause problems," because she was conflicted about wanting to see her mother. "The reason that I wanted to be in a foster home is because I wasn't getting beat no more. The reason I wanted to be at home was because I didn't know none of them people from Adam's cat and she was my mother."

{¶14} Although N.P. had difficulty recalling time frames, it was eventually established that the sexual abuse allegedly occurred in 2007, but she did not tell anyone about it until September

2009, when she reported it to one of her social workers.   Asked why she waited, N.P. replied, "I don't know, because I was still stuck in my shell.   Once I broke out of it, I just told them about it."

**{¶15}**     Tracy Williams, a social worker for Cuyahoga County Department of Children and Family Services, testified that she became involved with N.P.'s family in April 2008, "due to neglect and deplorable conditions of the home."    Additionally, there were allegations that N.P. had sexually abused her brother.   On September 5, 2008, N.P. was placed in a foster home after setting fire to the mattress in her mother's home.   According to Williams, N.P. was placed in a 30-day crisis unit at Berea Children's Home in September 2009, because "she was   acting out sexually" and had other behavior issues.   It was during this time that N.P. disclosed to Williams that N.P.'s mother, N.P.'s stepfather, and defendant had sexually abused N.P. when they were living in the Wilson Apartments.   Asked if it was unusual that this was the first Williams had heard of the abuse, Williams replied, "No. * * * It does take a long time and it's when the child is comfortable to disclose it." According to Williams, N.P. "would lie sometimes, but for the most part she told me the truth."

**{¶16}**     Peggy Haynes, a therapist at the Berea Children's Home, testified that she began to work with N.P. in January 2008 for behavioral issues.   In September 2009, Haynes was with N.P. and N.P.'s foster mother when N.P. "started crying and stating that she had been abused * * * when she was living * * * in the Wilson Towers" by her mother, her stepfather, and defendant.   Haynes testified that N.P.'s disclosure was "graphic.   She gave us a picture of what happened during the particular time."

**{¶17}**     Asked if it was "abnormal" that N.P. had not disclosed the sexual abuse previously, Haynes testified as follows: "There had to be an established trust and it had to be an atmosphere

where the information was a burden to her. At that time she was having a lot of problems with her behavior and her aggression and, you know, we asked the right questions at the right time and she was able to disclose."

{¶18} Cleveland Police Detective Richard Durst testified that he interviewed defendant on July 7, 2010, in relation to N.P.'s allegations. In the interview, defendant denied sexually abusing N.P., and he denied knowing N.P.'s mother or stepfather. Det. Durst took a buccal swab from defendant because it was believed that defendant and N.P.'s mother had a child together.

{¶19} The supervisor of the parentage identification department at the Cuyahoga County Coroner's Office testified that, according to defendant's DNA, he was the biological father of N.P.'s younger sister R.W., the two having the same mother.

{¶20} Lauren McAliley, who is a pediatric nurse practitioner with University Hospitals, testified that she examined N.P. twice. First, regarding allegations that her grandfather molested her and second, regarding allegations that she was sexually abused by her mother, stepfather, and defendant. N.P. told McAliley that defendant put his penis in her genital area and touched her chest. McAliley testified that N.P.'s physical "exam neither confirmed nor ruled out sexual abuse."

{¶21} Bradley Taylor testified on behalf of defendant, stating that he and defendant have been friends since 2006, and defendant has lived with him since 2008. Taylor testified that defendant was on probation at the time, and as far as Taylor knew, defendant "was good and current on everything," other than a domestic incident between defendant and the mother of one of defendant's children. Defendant had a positive relationship with his family, including his children, who had been removed from his custody. Because Taylor trusted defendant, Taylor would leave his

three-year-old daughter in defendant's care at times. Taylor had never heard of N.P. or her family, and Taylor did not know that defendant had a baby with N.P.'s mother.

{¶22} Defendant testified that he went through the fifth grade at school, and he had trouble reading and writing. Defendant was put on probation and ordered to attend anger management classes as a result of a domestic dispute. Otherwise, defendant has "never been in trouble." Defendant lived in Wilson Towers in 2007. He knew of N.P.'s mother and stepfather from the apartment building but did not realize they were married. Eventually, defendant "got lucky" and had sex with N.P.'s mother in the hallway. It was not until he received the paternity test results associated with this case that he realized he was R.W.'s father.

{¶23} Defendant denied having sexual relations or any contact with N.P. other than seeing her around the apartment building.

{¶24} In *State v. Blankenship*, 8th Dist. No. 77900, 2001 WL 1617225 (Dec. 13, 2001), this court held that

> [t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction. * * * Moreover, a victim's testimony concerning penetration need not be corroborated by the medical evidence. * * * Finally, victim testimony related to penetration is sufficient to support a conviction for rape even where the victim's own testimony is conflicting on the issue.

{¶25} Given N.P.'s testimony in this case, a rational trier of fact could have found the elements of defendant's convictions proven beyond a reasonable doubt. N.P. testified that when she was nine years old defendant touched her chest and had sexual intercourse with her. She also testified that she did not feel free to leave the bedroom at the time. If believed, this testimony alone

supports convictions for rape, kidnapping, and gross sexual imposition of a victim who was under thirteen years old.

{¶26} Turning to defendant's argument that his convictions were against the manifest weight of the evidence, we are reminded that the court in this case was in the best position to judge the credibility of the witnesses. According to the record, N.P. had a troubled childhood and her reluctance to discuss the details of her abuse was justified by the social workers involved in her case. Additionally, the social workers and the nurse practitioner testified consistently about N.P.'s recollection of defendant sexually abusing her. Furthermore, defendant lied to authorities when he was first accused of committing these offenses by denying that he knew N.P., her mother, or her stepfather. We cannot say that the court lost its way by believing N.P's testimony rather than defendant's.

{¶27} Accordingly, defendant's convictions are supported by sufficient evidence and are not against the manifest weight of evidence in the record. Defendant's first and second assignments of error are overruled.

{¶28} Defendant's third and final assignment of error states the following:

{¶29} III. "Appellant's rights were violated when he was convicted without ever having a competency hearing although he had been referred to the court psychiatric clinic."

{¶30} Trial was scheduled to begin on November 3, 2010, and according to the record, the following colloquy took place:

> DEFENSE COUNSEL: * * * I also brought to the attention of the court that [defendant] cannot read or write and that I was asking the court for leeway in order to, when the witness finished that I get ten or 15 minutes, so that I could properly cross-examine or do what I had to do with each witness.

The issue then became important to the court to determine other factors that related to what the court would decide and may have decided. I brought this up, what we needed to do, the court, and there was some issues brought up with regard to how well he could read and write, his actual competency and things of that nature and that was discussed, your Honor.

* * *

PROSECUTOR: The state does have in its possession an interview through the Cleveland Police Department that has been given through discovery where these allegations are alleged by the defendant that he cannot read, cannot write, has less than a fifth grade education.

So I would also move the Court for review of competency.

THE COURT: I am troubled that this issue was not brought to the court's attention prior to the day set for trial.

I appreciate, [prosecutor], that you were handed this file only a few days ago. But nonetheless, I wish that this had been brought to our attention a month ago. We could have had this issue determined and either proceed or not proceed to trial today.

Under the circumstances though, I think in the interest of justice, I have no real option but to order the trial continued, sua sponte.

The defendant will be referred to the court psychiatric clinic for an evaluation as to competency to stand trial.

I expect we will have a report probably by the end of this month or very early in December and we can move on from there.

If [defendant] is found competent to stand trial, we will get it tried as quickly as possible, if not, competent, but restorable, we will do that and move again as quickly as we can.

If some other finding is entered then we may very well have to deal with that.

**{¶31}** The court issued a journal entry the next day, November 4, 2010, stating the following:

Competency hearing set for 12/09/2010 at 10:00 a.m. At the request of defendant. Defendant is referred to court psychiatric clinic * * * in accordance with [R.C.] 2945.371 competence to stand trial * * * to examine [defendant].

{¶32}    On December 9, 2010, the court held a pretrial and continued the competency hearing to Ja[nuary] 13, 2011, "at the request of defendant."   Another journal entry continued the competency hearing to Febru[ary] 2011, "at the request of defendant."    This journal entry also referred defendant to the court psychiatric clinic [for] evaluation of "competence to stand trial" and "sanity at the time of the act."   On February 2, 2011, the court [held a] pretrial, and the associated journal entry states that "competency hearing/trial remains set for 02/09/2011 a[t] a.m.   At the request of defendant."

{¶33}    On February 9, 2011, a hearing was held on the record to discuss various motions.   The [court] stated that defendant's motion to dismiss would be heard on February 28, 2011:   "[i]f the motion is denie[d] trial will follow directly after that."   No mention was made of defendant's competency at the hearing or [in the] journal entry.   Trial commenced as scheduled on February 28, 2011.

{¶34}    Pursuant to R.C. 2945.37(B), "In a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of defendant's competence to stand trial.   If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section."

{¶35}    In *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986), the Ohio Supreme Court held that "there is no question that where the issue of the defendant's competency to stand trial is raised prior to the trial, a competency hearing is mandatory."   However, the court also held that "the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency."   *Id.*

{¶36}    The *Bock* Court found the failure to hold a competency hearing harmless under the circumstances of the case.

> Defense counsel, after the original motion for a hearing, failed ever again to mention the defendant's competency until the time for appeal. The record reveals no adequate indication of any behavior on the part of the defendant which might indicate incompetency. Nor is there any expert or lay opinion in the record that defendant was actually incompetent. Furthermore, the defendant testified extensively at trial under direct, cross-, redirect and recross-examinations with no apparent behavior which would lead this court to believe that he was not competent to stand trial.

*Id.* at 111.

**{¶37}** This court has reversed cases for failure to hold a competency hearing before accepting a guilty plea when a suggestion of incompetency is left undeveloped in the record. A competency to stand trial determination is inherent in a proper Crim.R. 11 plea hearing. In *State v. McGrath*, 8th Dist. No. 91261, 2009-Ohio-1361, ¶ 14-23, this court found reversible error in accepting a guilty plea based on failure to hold a second competency hearing after the defendant was previously found incompetent to stand trial, and the record did not reflect his restoration to competency. Additionally, in *State v. Smith*, 8th Dist. No. 92649, 2010-Ohio-154, ¶ 7, this court found reversible error for failure to hold a competency hearing before taking the defendant's plea when the record reflected "the fact that Smith was experiencing auditory hallucinations." Finally, in *State v. Cruz,* 8th Dist. No. 93403, 2010-Ohio-3717, this court found reversible error in accepting a plea without a competency hearing when a report filed in the juvenile court counterpart of Cruz's case suggested he was incompetent to stand trial. "Unlike *Bock*, we cannot glean sufficient information from this record to determine whether the court's failure to conduct the hearing was harmless." *Id.* at ¶ 19.

**{¶38}** In the instant case, prior to trial, defendant asserted that he was illiterate. However, illiteracy is not conclusive as to competency to stand trial. *See State v. Bays,* 2d Dist. No. 95-CA-118,

1998 WL 32595 (Jan. 30, 1998) (holding that "[l]ow cognitive abilities do not necessarily render an individual incapable of understanding the nature of the proceedings against him or unable to assist in his defense * * *"). Pursuant to R.C. 2945.37(G), "A defendant is presumed to be competent to stand trial." However, a court will find incompetency to stand trial if, "because of [a] mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the * * * defense * * *."

{¶39} We find the instant case analagous to *Bock*, in that defendant did not revisit the issue of his competency when his trial began without a competency hearing. Additionally, defendant testified, and nothing about his direct or cross-examinations suggested he was incompetent to stand trial. There is no evidence in the record that defendant was incompetent, and as the burden is on defendant to overcome the presumption of competency, we find that the failure to hold a hearing in this regard was harmless. *See State v. Filiaggi*, 86 Ohio St.3d 230, 236, 714 N.E.2d 867 (1999).

{¶40} Defendant's third and final assignment of error is overruled.

{¶41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

MARY J. BOYLE, P.J., CONCURS;
KATHLEEN A. KEOUGH, J., DISSENTS (SEE ATTACHED DISSENTING OPINION.)


KATHLEEN ANN KEOUGH, J., DISSENTING:

{¶42} I respectfully dissent with the majority's decision in finding harmless error for failing to conduct a competency hearing in this matter.

{¶43} R.C. 2945.37(B) provides that "in a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section." In this case, the prosecutor told the court there were allegations that Macon could not read or write and that he did not have beyond a fifth grade education; thus, the prosecutor requested that Macon undergo a competency evaluation.

{¶44} The majority relies on *State v. Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), to conclude that the trial court's failure to hold a competency hearing as required by R.C. 2945.37(B) was harmless error because (1) the issue of competency was not raised by defense counsel prior to the start of trial; (2) the record lacked any indicia of incompetency; and (3) Macon's testimony at trial did not suggest he was incompetent to stand trial. I cannot agree.

{¶45} First, R.C. 2945.37(B) contains a mandatory requirement that when the issue of competency is raised prior to trial, "the court *shall* hold a hearing on the issue" of competency.

(Emphasis added). "Under former R.C. 2945.37(A) (now subsection [B]), a trial court must hold a competency hearing if a request is made before trial." *State v. Were*, 94 Ohio St.3d 173, 2002-Ohio-481, 761 N.E.2d 591, paragraph one of the syllabus. Therefore, because the prosecutor raised the issue of competency, and in accordance with the express language of the statute, a competency hearing was required in this case.

{¶46} Additionally, *Bock* is distinguishable from the facts of the case before us. In *Bock*, at the time defense counsel requested a competency hearing, the defendant had been hospitalized for drug-related problems, suffered from emotional distress, and had commented about suicide. *Bock* at 110. The Ohio Supreme Court opined that given the definition of incompetency, these facts "alone [were] not sufficient to indicate a lack of competency." *Id.* Because of the lack of "sufficient indicia of incompetency," the court held that the trial court's failure to conduct a competency hearing was harmless. *Id.* at 111. *Compare Were* at paragraph two of the syllabus, ("[a]n evidentiary hearing is constitutionally required whenever there are sufficient indica of incompetency to call into doubt defendant's competency to stand trial (*State v. Berry* [1995], 72 Ohio St.3d 354, 650 N.E.2d 433, followed.)").

{¶47} In this case, there are sufficient indicia of incompetency to warrant a hearing on the issue of incompetency. "It is settled law that 'a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.'" *State v. Rubenstein*, 40 Ohio App.3d 57, 60, 531 N.E.2d 732 (8th Dist. 1987), quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

**{¶48}** Macon is alleged to be unable to read or write and has only a fifth-grade level of education. Due to these deficiencies, Macon's defense counsel found it necessary to request additional time between witnesses to confer with Macon to properly prepare his cross-examination of the witnesses after they testified. These factors, in my opinion, are "sufficient indicia of incompetency" that warranted a competency evaluation and required that the trial court to conduct a mandatory competency hearing. "The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." *State v. Berry*, 72 Ohio St.3d 354, 359, 1995-Ohio-310, 650 N.E.2d 433, quoting *Drope* at 175.

**{¶49}** The record is not always developed as to the competency of a defendant prior to the referral for an evaluation, especially when a suggestion of low intelligence or a possible developmental disability is at issue. In this case, the record reflects that the request for a competency evaluation was ordered on two separate dates through two separate journal entries, which lends credence to the necessity of the report and subsequent hearing.

**{¶50}** Accordingly, I would find that the failure to hold a competency hearing as required by R.C. 2945.37(B) is reversible error, and thus, would sustain Macon's third assignment of error.