[Cite as *State v. Armstrong*, 2016-Ohio-2627.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103088**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# SHAWN ARMSTRONG

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-586710-A

**BEFORE:**   Blackmon, J., Keough, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**   April 21, 2016

**ATTORNEY FOR APPELLANT**

Gregory T. Stralka
6509 Brecksville Road
P.O. Box 31776
Independence, Ohio 44131


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Frank Romeo Zeleznikar
Assistant County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}   Shawn Armstrong appeals his convictions for drug trafficking and criminal simulation and assigns twenty-one errors, seventeen of which were filed pro se, for our review.[1]

{¶2}   Having reviewed the record and pertinent law, we affirm Armstrong's convictions.   The apposite facts follow.

{¶3}   The Cuyahoga County Grand Jury returned a four-count indictment, charging Armstrong with trafficking heroin in excess of 50 grams but less than 250 grams, drug possession of heroin in excess of 50 grams but less than 250 grams, possession of criminal tools, and criminal simulation.   All of the counts, except for the criminal simulation count, had a forfeiture specification attached.   The charges arose from a large amount of heroin and some counterfeit money found in Armstrong's car after it was stopped on Interstate 77 for not displaying a front license plate.

{¶4}   On January 12, 2015, Armstrong entered into a plea agreement.   He agreed to plead guilty to the drug trafficking charge and forfeiture specification and the criminal simulation charge.   The remaining counts were nolled.   Sentencing was continued so that a presentence investigation report ("PSI") could be completed.

---

[1]*See* appendix.

**{¶5}** Three days after entering his plea, Armstrong filed several motions, all related to his allegation he was a "freeman" or sovereign citizen who is not governed by the laws of the state. These motions included an "Affidavit of Mistake" arguing that he was wrongly indicted and received by mistake correspondence and documents from the court addressed to "Shawn Armstrong." He contended that he was not that person, but was "Shawn of the Armstrong Family." He filed a motion to remove counsel in which he stated he terminated his counsel and attached a "Truth Affidavit" appointing "Shawn of the Armstrong Family" as his attorney. He also filed a pro se motion to withdraw his plea arguing that he was a "freeman" who was not subject to the jurisdiction of the court.

**{¶6}** On February 13, 2015, a sentencing hearing was conducted where the trial court questioned Armstrong about the motion to withdraw his plea. The court noted that between the time of the plea and sentencing, Armstrong had become a "freeman" and that his arguments related to being a sovereign citizen were not recognized under state or federal law. The trial court denied Armstrong's motion to withdraw his plea after concluding that the plea was voluntarily, knowingly, and intelligently entered. The court also concluded that Armstrong was claiming to be a sovereign citizen to "weasel your way out of this" and that Armstrong was having a change of heart.

**{¶7}** Armstrong proceeded to act in a disruptive manner by not allowing the trial court to speak and constantly requesting that the trial court prove it had jurisdiction over him and to prove the trial judge took the "oath of office." The trial court eventually had Armstrong handcuffed and when he would not stop being disruptive, removed him from the courtroom and placed him in a holding cell where he could hear the sentencing

via video. In response, Armstrong placed his hands over his ears. The trial court sentenced Armstrong to a total of seven years in prison.

### Right to Self-Representation

{¶8} In his first assigned error, Armstrong argues the trial court denied him his right to self-representation.

{¶9} Criminal defendants enjoy the constitutional right to self-representation at trial provided that the right to counsel is knowingly, voluntarily, and intelligently waived after sufficient inquiry by the trial court. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 89. "If a trial court denies the right to self-representation, when properly invoked, the denial is per se reversible error." *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 32, citing *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996); *McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). The invocation of the right to self-representation must be "clear and unequivocal." *Cassano* at ¶ 38. It must also be timely made; self-representation may be properly denied when requested in close proximity to trial or under circumstances indicating that the request is made for purposes of delay or manipulation. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 50.

{¶10} Armstrong did not unequivocally or timely assert his right to self-representation. Armstrong filed a "notice of removal of counsel" three days after he pleaded guilty. In the notice, Armstrong stated that his retained counsel was "terminated in representing any and all legal matters concerning the Estate of Shawn Armstrong."

He gave no reason for the termination but stated that pursuant to "Administrative maritime claim rules c(6)" he designated "Shawn of the Armstrong Family" as his "agent with power of attorney." This argument was based upon Armstrong's claim that he was a "freeman."

{¶11} The Second District, relying on federal case law, stated that arguments based on sovereign citizenship should be rejected, explaining as follows:

[Beliefs of sovereign citizens] involve the alleged corporate status of Ohio and the United States; the relationship between the yellow fringe on the United States flag and admiralty jurisdiction; and the effect of capitalizing the letters of his name. Plaintiff ultimately maintains that he does not have a contract with either Ohio or the United States and, therefore, does not have to follow government laws. * * * [F]ederal courts have routinely recognized that such theories are meritless and worthy of little discussion. *See, e.g.*, *People of the Republic United States ex rel. Goldsmith v. Schreier*, No. CIV. 124155, 2012 U.S. Dist. LEXIS 131987, 2012 WL 4088858, at *4 (D.S.D. Sept. 17, 2012) ("Other courts have noted the sovereign citizen theory has been consistently rejected."); *United States v. Amir*, No. 1:10CR439, 2010 U.S. Dist. LEXIS 131503, 2010 WL 5014451, at *1 (rejecting as frivolous Defendant's argument that he was a "private natural man and real person" and therefore not subject to the laws of the United States); *United States v. Ward*, 182 F.3d 930 [published in full-text format at 1999 U.S. App. LEXIS 9255], 1999 WL 369812, at *2 (9th Cir. 1999)

(table) (rejecting sovereign citizen argument as frivolous and undeserving of "extended argument"); *Eidson v. Burrage*, 113 F. App'x 860, 862 (10th Cir.2004) (holding that a plaintiff's "yellow fringe flag" arguments were "indisputably meritless").

*State v. Few*, 2d Dist. Montgomery No. 25969, 2015-Ohio-2292, ¶ 6, quoting *Dubose v. Kasich*, S.D.Ohio No. 2:11-CV-00071, 2013 U.S. Dist. LEXIS 6086 (Jan. 15, 2013). *See also State v. Thigpen*, 8th Dist. Cuyahoga No. 99841, 2014-Ohio-207, ¶ 39; *State ex rel. Robinson v. O'Donnell*, 10th Dist. Franklin No. 15AP-225, 2015-Ohio-3987.

{¶12} Because courts have consistently rejected arguments based on sovereign citizenship and deemed them frivolous, Armstrong's notice was not an unequivocal request for self-representation. Even if the notice was deemed to be a clear request for self-representation, the notice, which was filed three days after the plea was entered, was not timely. Additionally, three days prior to filing the notice, Armstrong had represented to the trial court that he was satisfied with his counsel. The right to self-representation cannot be used as a delay tactic. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 50. Armstrong gave no indication that he held the beliefs attributed to sovereign citizens at his plea. Therefore, we agree with the trial court's determination that Armstrong was raising these arguments for the purpose of delay.

{¶13} At the sentencing hearing, Armstrong stated as follows regarding his attorney's representations:

> "[W]ith the representation of Mr. Warren, I've been — I had to forego all my rights. And I am a constitutional human being, a freeman on the land. I am not a corporation.

And so with that said, Your Honor, I have proof right here that this is a corporation that we're dealing with, and I am the power of attorney over that corporation, sir. And according to U.S.C. United States Code 1603, it states that I am a corporation.

Tr. 51. As we stated above, the espousement of the freeman philosophy is not an unequivocal request to self-representation.

{¶14} Armstrong did later raise arguments at his hearing that he did not believe his counsel was zealously representing him because he failed to challenge the authenticity of the traffic stop video and withdrew his motion to suppress. As we will discuss in Armstrong's third assigned error, the trial court concluded that there was no merit to these allegations. Accordingly, Armstrong's first assigned error is overruled.

**Denial of Motion to Withdraw Plea**

{¶15} In his second assigned error, Armstrong argues that the trial court erred by denying his presentence motion to withdraw his guilty plea.

{¶16} Generally, motions to withdraw guilty pleas before sentencing are to be freely and liberally allowed. *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 57, citing *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992); *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980), citing *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir.1978). However, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. *Xie* at paragraph one of the syllabus. In ruling on a presentence motion to withdraw a plea, the court must conduct a hearing and decide whether there is a reasonable and legitimate basis for withdrawal of the plea. *Id*. at 527. The decision to grant or deny such a motion is

within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.  *Id.*

{¶17} In *Peterseim*, this court set forth the standard for determining whether the trial court has abused its discretion in denying a presentence motion to withdraw a plea:

> A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

*Peterseim* at paragraph three of the syllabus.

{¶18} A review of the record in this case demonstrates that the trial court fully complied with the *Peterseim* criteria.  The trial court conducted a hearing on Armstrong's motion.  Armstrong was represented by competent counsel and a review of the plea hearing shows that Armstrong was provided a full hearing pursuant to Crim.R. 11 prior to entering the plea.

{¶19} Although Armstrong contended at the hearing that counsel was ineffective in representing him, the trial court found no merit to Armstrong's arguments. Armstrong's written motion to withdraw his plea was based on his claimed status as a sovereign citizen, which, as we stated above are arguments that have been rejected by state and federal courts.  The trial court concluded that Armstrong's claims of ineffective counsel and claims of being a "freeman" or sovereign citizen were based on a change of heart.  The court stated as follows:

This is a classic situation where it's a change of — you're having a change of heart about it, and I don't have to accept your — I don't have to withdraw your plea for you just because I believe that this is — this is a game, and I'm not going to play your game, and so we are going forward today.

Tr. 54-55.

{¶20} The court further clarified as follows at the end of the sentencing hearing:

And just for the record in this case, over the tumult that was occurring earlier, I did deny defendant's motion to withdraw, and I did that on the grounds that, based upon the Rule 11 colloquy that I delivered, the defendant's participation in that colloquy, the defendant's lack of any objections at that time, and both counsel for the defendant and counsel for the state telling this court that I did comply with the Rule 11 requirements, I find that the defendant's plea in this matter, especially when coupling it with the fact that he is now espousing, quote, freeman views and issued a rambling motion to withdraw his plea, stating that he is not who he says he is, that he's a corporation, and so on and so forth, clearly, this is an attempt to simply delay and belittle the laws of the state of Ohio, and this court will not tolerate that.

And for that reason, and for the fact that it appeared to just be simply a change of heart attempt in this matter given the fact that the court did witness during the suppression hearing the traffic stop in this matter. The court saw nothing in that video that would show the court that it was — any way doctored or photo shopped or in any way altered. * * *.

And so I believe that this is strictly an attempt by the defendant to stall these proceedings and to not accept responsibility for this matter.

Tr. 84-85.

{¶21} "A mere change of heart regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a plea." *State v. Bloom*, 8th Dist. Cuyahoga No. 97535, 2012-Ohio-3805, ¶ 13. We will address Armstrong's contention

that his counsel was ineffective in Armstrong's third assigned error. Accordingly, Armstrong's second assigned error is overruled.

## Ineffective Assistance of Counsel

{¶22} In his third assigned error, Armstrong contends that his counsel was ineffective for abandoning the suppression motion prior to the conclusion of the suppression hearing.

{¶23} To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

{¶24} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.* at 694.

{¶25} Armstrong argues that if his counsel allowed the suppression hearing to be completed, the evidence would have shown that the officer unlawfully detained him in order to wait for the K-9 unit to respond. "Even without a reasonable suspicion of drug-related activity, a lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior." *State v. Jones*, 8th Dist. Cuyahoga No. 100300, 2014-Ohio-2763,

¶ 23; *State v. White*, 8th Dist. Cuyahoga No. 100624, 2014-Ohio-4202. A detention justified by issuing a ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that process. "[A]n officer should, on average, have completed the necessary checks and be ready to issue a traffic citation in approximately 15 minutes." *State v. Brown*, 183 Ohio App.3d 337, 2009-Ohio-3804, 916 N.E.2d 1138, ¶ 23 (6th Dist.).

**{¶26}** Our review of the partial suppression hearing shows that the detention was due to the officer waiting for back-up to arrive because of dispatch's advising the officer of Armstrong's violent past history. The officer was alerted that Armstrong had prior convictions for aggravated murder, murder, aggravated robbery, and drug trafficking. According to the officer, Brecksville officers are trained to immediately respond as back-up when a person with a violent history is stopped.

**{¶27}** Armstrong's history, along with Armstrong's contradictory statements were the reasons the officer waited for back-up to arrive. Armstrong had informed the officer that he was on his way from Columbus to Warren to visit his mother. However, the officer noted that traveling south on Interstate 77 would not be the travel path from Columbus to Warren. Armstrong also told the officer that the handicap tag on the car belonged to his mother who lived with him in Columbus. However, he told the officer that he was on his way to visit his mother at her house in Warren. The car was also registered to a female. Under these circumstances, the officer stated he was not sure whether the car was stolen.

**{¶28}** "When detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12. Further, "[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Id.* Further, "[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992). Here, due to the facts that unfolded after the officer stopped Armstrong's vehicle, the duration of the stop was not unreasonable.

**{¶29}** Moreover, because the duration of the stop was an issue presented at the motion to suppress, the officer, while watching the video at court, testified that the video showed that Armstrong was stopped at 1501:28. Dispatch informed the officer of Armstrong's priors at 1514:26 and back-up was on the scene seconds later at 1515:00. Because the actual video was not presented as part of the appellate record, we have to rely on the officer's testimony regarding the time the events occurred. Based on the officer's testimony, the K-9 officer arrived within 15 minutes of the stop. Subsequently, the dog sniffed the exterior of the vehicle and alerted to drugs. This was not an unreasonable amount of time.

**{¶30}** We conclude that counsel's advising Armstrong to enter into a plea after the video of the traffic stop was played at the suppression hearing was based on trial strategy. The trial court also stated at the sentencing hearing that it viewed a video of the stop and found that it was lawful. Counsel was not required to pursue a motion to suppress if doing so would be a futile act. *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist. 1980); *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28.

**{¶31}** Lastly, Armstrong was aware that a condition of the plea was that he would withdraw his suppression motion. At the plea hearing, the court asked Armstrong: "You will be waiving your rights I just explained including your suppression motion. Do you understand that?" Armstrong responded that he did understand. Accordingly, Armstrong's third assigned error is overruled.

## Mentally Competent

**{¶32}** In his fourth assigned error, Armstrong argues that the trial court should not have denied Armstrong's motion to withdraw his guilty plea until it ascertained that Armstrong was mentally competent to enter into a plea voluntarily, knowingly, and intelligently.

**{¶33}** Although Armstrong was acting erratically at his sentencing hearing, he was not acting in this manner during his plea hearing, which was conducted a month prior to the sentencing hearing. At the plea hearing, he interacted with the court in a respectful manner and even asked questions of the court. He indicated he understood the plea and the rights he was waiving. Thus, at the plea hearing, there was no indication that Armstrong was incompetent to enter into a plea. The trial court did not abuse its

discretion by concluding that Armstrong's antics were due to a change of heart regarding the plea.

{¶34} Because the record does not support Armstrong's contention that he was incompetent at the time of his plea hearing, the court did not err by concluding that Armstrong's plea was knowingly, voluntarily, and intelligently made. *See State v. Macon*, 8th Dist. Cuyahoga No. 96618, 2012-Ohio-1828, ¶ 37. Armstrong's fourth assigned error is overruled.

**Pro Se Assigned Errors:**

## Motion to Withdraw

{¶35} Armstrong's first and second pro se assigned errors will be addressed together. He contends that the trial court erred by denying his motion to withdraw his plea because he entered his plea based on faulty advice of counsel who did not exercise due diligence, and promised he would receive probation.

{¶36} There is nothing in the record to support Armstrong's allegations. At his guilty plea he stated that he was not coerced or induced to enter into the plea based on any promises, and the trial court advised him prior to his entering the plea that a prison sentence was mandatory. Armstrong also indicated that he understood that one of the conditions of his plea was that he would withdraw his motion to suppress. The time for him to object to the withdrawal of the motion was then.

{¶37} As we held in the third assigned error presented by Armstrong's counsel, the record of the partial suppression hearing indicated that Armstrong was properly stopped

and detained. Accordingly, Armstrong's first and second pro se assigned errors are overruled.

## Prosecutorial Misconduct

{¶38} We will address Armstrong's third, seventh, twelfth, sixteenth, and seventeenth pro se assigned errors together because they all contend that the prosecutor engaged in misconduct.

{¶39} When reviewing a claim of prosecutorial misconduct, this court's task is to determine whether the comments and questions by the prosecution were improper and, if so, whether they prejudiced the appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480,739 N.E.2d 749 (2001). After reviewing the assigned errors, we conclude that the prosecutor did not engage in misconduct.

{¶40} Armstrong contends that the prosecutor altered the indictment and bill of particulars by changing the location of the stop. Specifically, he contends that the stop occurred on Interstate 77, yet the prosecutor states in the indictment and the bill of particulars that the location was "I-77 and Oakes Road." He contends he was never on Oakes Road and that the prosecutor included "Oakes Road" because the Brecksville officer would not have jurisdiction to stop him on Interstate 77 because the interstate is solely within the jurisdiction of the state troopers.

{¶41} The fact that the stop occurred on Interstate 77 did not prevent the Brecksville officer from having jurisdiction to stop Armstrong. Armstrong was stopped on the section of the interstate that was within Brecksville's jurisdiction. Pursuant to R.C. 4513.39(A), the state highway patrol has exclusive jurisdiction to make arrests,

"except within municipal corporations and except as specified in division (B) of this section * * *." The Ohio Supreme Court has interpreted this statute to mean that "a township officer has no authority to stop motorists for any of the offenses, enumerated in that statute, which have been committed on a state highway outside municipal corporations." Here, Armstrong was stopped on the section of Interstate 77, which was within the boundaries of Brecksville, Ohio. Therefore, the addition of "Oakes Road" in the indictment and bill of particulars did not alter the outcome of Armstrong's convictions.

{¶42} Armstrong also contends that the prosecutor submitted a tampered video to the grand jury. We have no evidence of what was presented to the Grand Jury. Because such evidence is outside the record, we cannot review this claim on direct appeal. *State v. Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, ¶ 91.

{¶43} Armstrong also contends that the video shown at the suppression hearing was tampered with in order to shorten the length of the stop. Armstrong failed to provide a copy of the video as part of the appellate record. In the absence of a complete record, this court must presume regularity in the trial court's proceedings and accept its judgment. *State v. West*, 8th Dist. Cuyahoga Nos. 97398 and 97899, 2012-Ohio-6138, ¶ 25. The trial court at the sentencing hearing addressed Armstrong's claim that the video was tampered with and stated:

> [G]iven the fact that the court did witness during the suppression hearing the traffic stop in this matter, the court saw nothing in that video that would show the court that it was — is any way doctored or photo shopped or in any way altered.

Tr. 85.

Thus, given the court's findings on this issue, we conclude that there was no evidence that the video had been tampered with.

**{¶44}** Based on our above discussion, we conclude that the trial court did not err by refusing to dismiss the indictment and that the prosecutor did not engage in misconduct. Accordingly, Armstrong's third, seventh, twelfth, sixteenth, and seventeenth assigned errors are overruled.

## Jurisdiction of the Trial Court

**{¶45}** In his fourth pro se assigned error, Armstrong contends that the trial court erred by failing to present evidence that it had jurisdiction over his case.

**{¶46}** Subject matter jurisdiction is conferred upon the court of common pleas by R.C. 2931.03, which provides: "The court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." Accordingly, Armstrong's fourth assigned error is overruled.

## Ineffective Assistance of Counsel

**{¶47}** We will address Armstrong's fifth, sixth, and thirteenth pro se assigned errors together because they all deal with his claim that counsel was ineffective.

**{¶48}** Armstrong contends that counsel was ineffective because counsel withdrew his motion to suppress. However, Armstrong agreed to withdrawing the motion in exchange for the plea. Moreover, as we have already found in the discussion of the above assigned errors, the motion would have been unsuccessful.

{¶49} Armstrong also contends that his counsel should have stopped representing him after Armstrong terminated him three days after the guilty plea was entered. As we held in Armstrong's first assigned error filed by counsel, Armstrong did not unequivocally or timely assert his right to self-representation. Accordingly, this argument is moot.

{¶50} Armstrong also contends that counsel was ineffective for failing to challenge the indictment and bill of particulars regarding the location of the stop. Based on our disposition of Armstrong's third pro se assigned error, we conclude that counsel was not ineffective for failing to challenge the indictment or bill of particulars.

{¶51} Armstrong also contends that he was coerced by counsel to enter into the plea. Our review of the record shows no evidence that Armstrong was coerced into entering the plea. Armstrong informed the court that he was not entering the plea under coercion or based on promises. He also informed the court at the plea hearing that he was satisfied with his counsel's representation. Accordingly, Armstrong's fifth, sixth, and thirteenth pro se assigned errors are overruled.

## Trial Court Biased

{¶52} We will address Armstrong's eighth and tenth pro se assigned errors together as they both concern the conduct of the trial judge.

{¶53} Armstrong argues that the trial judge was biased because he terminated the suppression hearing in order to influence defense counsel to withdraw the suppression motion and to advise Armstrong to enter into a plea. There is nothing in the record before us showing that the trial court exerted any influence regarding Armstrong's

decision to enter a plea and to withdraw his motion to suppress. If this did occur, such evidence is outside the record and, therefore, cannot be raised on direct appeal, but must be raised in a petition for postconviction relief. *State v. Smith*, 17 Ohio St.3d 98, 101, 477 N.E.2d 1128 (1985), fn. 1. Moreover, Armstrong stated at his plea hearing that he was not being coerced to enter the plea and that he understood that by entering the plea, he was withdrawing his motion to suppress.

{¶54} Armstrong also contends that the trial court violated his right to due process and equal protection of the law, and committed cruel and unusual punishment by handcuffing him and placing him in a holding cell. Crim.R. 43(B) provides as follows:

> Where a defendant's conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence, the hearing or trial may proceed in the defendant's absence or by remote contemporaneous video, and judgment and sentence may be pronounced as if the defendant were present. Where the court determines that it may be essential to the preservation of the constitutional rights of the defendant, it may take such steps as are required for the communication of the courtroom proceedings to the defendant.

{¶55} In the instant case, Armstrong was argumentative and constantly interrupted the trial judge. Due to his disruptive behavior, the trial court initially had Armstrong placed in handcuffs. We find no prejudice because this was a sentencing hearing where a jury was not present.

**{¶56}** When Armstrong continued to be disruptive, the trial court warned Armstrong that he would be held in contempt or removed from the courtroom. In spite of these warnings, Armstrong continued to disrupt the court proceedings; therefore, the trial court ordered that Armstrong be removed from the courtroom and placed in a holding cell where he could hear the trial court via a speaker. Armstrong then placed his hands over his ears. However, the trial court noted that despite this, Armstrong could still hear.

**{¶57}** The trial court explained its decision to remove Armstrong as follows:

As stated earlier on the record, the defendant was belligerent in the courtroom. He was disruptive. He would not stop talking. He was talking in a very loud tone of voice.

I made several attempts to ask him to cease and desist the behavior, to stop yelling, to shut his mouth, yet he continued to interrupt this court's proceedings, demanding this judge's arrest, demanding to see my oath of office, typical things that people believing in the freeman philosophy will espouse. And so I ordered a recess.

I had him brought back out again and offered to continue this hearing with him in the courtroom.

Immediately upon attempting to restart the hearing, he started interrupting me again.

And so at this point, I chose to have him removed and for — to keep the sanctity of the courtroom intact.

And I chose the least restrictive measure I could think of, which is to have him in a holding cell off the side of my courtroom, with a microphone and speakers set up for him to understand and hear the proceedings as they're going forward here, and so I have set that up.

* * *

For the record, I've been informed that the defendant is in his cell, covering his ears to avoid hearing what I'm saying.

The defendant's juvenile efforts at disrupting this hearing will not be

tolerated. I'm just gonna' keep talking. We know he can hear back there.

And if he wants to act in that manner and act in an immature way, that's his decision to do so as a grown man.

Tr. 78-81.

**{¶58}** Flagrant disregard in the courtroom of the elementary standards of proper conduct should not and cannot be tolerated. *Illinois v. Allen*, 397 U.S. 337, 342-344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Trial judges "confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case," and "although no one formula will be best in all situations," trial courts may "bind and gag the defendant * * *," cite him for contempt, or "take him out of the courtroom * * *." *Id*. at 343-344.

**{¶59}** In the present case, Armstrong's conduct was so disruptive that the trial court could not proceed with him in the courtroom. The trial court warned Armstrong several times to cease his behavior or actions would be taken. However, Armstrong chose not to heed the warnings and continued to interrupt the trial court so that the proceedings could not continue. Therefore, we find the trial court had sufficient cause to remove Armstrong from the courtroom.

**{¶60}** Armstrong also contends that he was not advised of his appellate rights. However, our review of the transcript shows that the trial court did advise Armstrong of his right to appeal. The trial court stated: "The defendant does have the right to appeal this decision by filing a notice of appeal within 30 days to the Eighth District Court of Appeals." Tr. 83-84. Accordingly, Armstrong's eighth and tenth assigned errors are overruled.

## Self-Representation

{¶61} In his ninth pro se assigned error, Armstrong contends the trial court erred by not allowing him to represent himself. We addressed this assigned error in Armstrong's counsel's first assigned error. Accordingly, Armstrong's assigned error is moot.

## Trial Court's Failure to Issue Findings of Fact

{¶62} In his eleventh pro se assigned error, Armstrong contends the trial court erred by denying his motion for a new trial, motion for summary judgment, and motion to set aside the verdict without issuing any findings of fact and conclusions of law.

{¶63} Armstrong's conviction resulted from a guilty plea. This court in *State v. Woodley*, 8th Dist. Cuyahoga No. 83104, 2005-Ohio-4810, ¶ 8, held:

> "[a] plea of guilty in a criminal case precludes the defendant from thereafter making a motion for a new trial." *State v. Frohner*, 150 Ohio St. 53, 80 N.E.2d 868 (1948). Moreover, allowing a defendant to file a motion for new trial instead of a motion to withdraw the plea permits the defendant to circumvent the more stringent standard set forth in seeking a withdrawal of a plea.

Thus, a motion for a new trial was not appropriate in the instant case.

{¶64} Armstrong also filed numerous motions to set aside the verdict and judgment in which he alleged the same arguments he alleges on appeal. These motions were filed prior to the expiration of the time for his direct appeal and, therefore, do not

constitute petitions for postconviction relief, which would require findings of fact and conclusion of law for the denial of the first petition filed. *State v. Apanovitch*, 107 Ohio App.3d 82, 99, 667 N.E.2d 1041 (8th Dist.1995). As the trial court found in denying the first motion, "[t]he defendant is free to appeal any perceived irregularities in the proceedings through the appellate process." Journal Entry, April 2, 2015. Because the motions do not constitute petitions for postconviction relief, Armstrong's filing of a motion for summary judgment, which is a motion governed by the rules of civil procedure, was not a legal vehicle to withdraw his guilty plea. Additionally, findings of fact and conclusions of law are not necessary for the denial of a motion to withdraw a guilty plea. *State ex rel. Chavis v. Griffin*, 8th Dist. Cuyahoga No. 77615, 2000 Ohio App. LEXIS 2644 (June 15, 2000). Accordingly, Armstrong's eleventh pro se assigned error is overruled.

## Final Appealable Order Pursuant to Crim.R. 32(C)

**{¶65}** In his fourteenth pro se assigned error, Armstrong contends his conviction is not a final appealable order because the journal entry does not set forth a finding of guilt.

**{¶66}** The Supreme Court of Ohio in *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, established that a sentencing journal entry is a final appealable order under R.C. 2505.02 and complies with Crim.R. 32(C) when it sets forth: (1) the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based; (2) the sentence; (3) the signature of the judge; and (4) entry on the journal by the clerk of the court.

**{¶67}** Armstrong contends his sentencing journal entry does not include a finding of guilt. However, a review of the sentencing entry shows that Armstrong pleaded guilty to drug trafficking and criminal simulation. This court held in *State ex rel. Forston v. Griffin*, 8th Dist. Cuyahoga No. 94612, 2010-Ohio-783, that the fact the entry shows the defendant pleaded guilty was sufficient to comply with Crim.R. 32(C). Accordingly, Armstrong's fourteenth pro se assigned error is overruled.

### Presentence Investigation Report

**{¶68}** In his fifteenth pro se assigned error, Armstrong argues that the trial court erred by not having a PSI completed prior to sentencing.

**{¶69}** The trial court noted on the record that it had continued the sentencing so that a PSI could be completed. However, Armstrong refused to appear for his PSI interview. Therefore, Armstrong invited the error. The doctrine of invited error holds that a litigant may not "take advantage of an error which he himself invited or induced." *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000).

**{¶70}** Moreover, a PSI is not required when the trial court sentences an offender to prison. *State v. Davis*, 8th Dist. Cuyahoga No. 95722, 2011-Ohio-1377, ¶ 9. A PSI is only required prior to the court imposing community control. Crim.R. 32.2; *Davis*; *State v. Rivas*, 8th Dist. Cuyahoga No. 100044, 2014-Ohio-833. Accordingly, Armstrong's fifteenth assigned error is overruled.

**{¶71}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON,   JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR

## APPENDIX

**Errors Assigned by Counsel**:

I. The appellant was denied of his right to act as his own counsel in violation of both state and federal law.

II. Appellant was deprived of his right to a trial when the trial court refused to allow him to withdraw his plea prior to sentencing.

III. The appellant's constitutional right to effective assistance of counsel was violated when such counsel abandoned a viable motion to suppress.

IV. The trial court erred when it denied appellant's motion to withdraw his guilty plea without first determining the extent of an alleged psychiatric disorder and the effect it may have had on his ability to understand the consequences of his change of plea.

**Pro Se Assigned Errors**:

I. Trial court abused its discretion when it denied appellant's pre-trial motion to withdraw his guilty plea violating his constitutional rights of the U.S. Constitution, Amendments, and Ohio Constitution, Article I, Section

and right to a fair and impartial trial, right to due process of the law, and right to confront and cross-examine and equal protection of the law.

II.    Defense counsel was ineffective for surprisingly withdrawing appellant's winnable Motion to Suppress violating his constitutional rights to confrontation and cross examination, due process of law, effective counsel, equal protection of law and right to a fair and impartial trial.

III.    State's prosecutor engaged in misconduct when he knowingly, intelligently, and willfully altered the incident location on, complaint and bill of particulars to obtain an indictment and ultimately a conviction violating appellant's constitutional rights to a fair and impartial trial, in the jurisdiction wherein the crime alleged to have taken place.

IV.  Trial court abused its discretion by refusing and ignoring appellant's challenges that it was lacking jurisdiction violating Crim.R. 12(C)(2) and his constitutional rights to due process of law, equal protection of law, cruel and unusual punishment and right to a fair and impartial trial within the district wherein the alleged crime is to have taken place.

V.  Defense counsel was ineffective for refusing to withdraw nor raise or adopt any of appellant's valid defenses after appellant expressed his strong desires for his removal violating appellant's right to effective assistance of counsel and self representation.

VI.   Defense counsel was ineffective when he refused to challenge any of the State's prima facie evidence — prosecutor's complaint, bill of particulars, indictment, video of traffic stop, dog sniffing, test of alleged drugs, jurisdiction, no Miranda warning, stop and arrest by Brecksville officer on interstate highway violating his constitutional right to effective counsel and due process.

VII. State's prosecutor engaged in misconduct when it submitted tampered evidence to a County Grand Jury in the form of video of appellant's initial traffic stop, thereby violating his constitutional right to due process of law and equal protection of law, cruel and unusual punishment.

VIII.    Trial court abused its discretion and erred when it stopped appellant's suppression hearing and summoned counselors into his chambers, where in the judge influenced defense counsel into withdrawing appellant's motion to suppress, violating his constitutional rights to confront and cross-examine, due process, cruel and unusual punishment, equal protection of the law and right to a fair and impartial trial.

IX.   Trial court abused its discretion and erred by denying appellant his right to self-representation and effective counsel, violating his constitutional rights to due process, effective counsel, fair and impartial trial, and equal protection of the law.

X.   Trial court abused its discretion and erred by intimidating, violently threatening, handcuffing and arresting appellant and placing him in a holding cell, ex-communicating him for the court without any allocution pursuant to Crim.R. 43 nor any advisement of his appellate rights, violating his constitutional rights to due process, cruel and unusual punishment, and equal protection of the law.

XI.   Trial court abused its discretion and erred by denying appellant's motions  for a new trial, summary judgment and set aside a verdict without issuing any findings of fact or conclusions of law nor any evidentiary hearings, violating appellant's due process of law and equal protection of the law.

XII.   Appellant was denied due process of law along with equal protection of law when the prosecuting attorney engaged in criminal acts of dishonesty, fraud, deceit, misrepresentation of facts, thereby defendant was prejudiced beyond repair to his constitutional rights to a fair and impartial trial.

XIII.   Appellant was denied effective assistance of counsel when counsel pressured appellant to take a guilty plea, by which had counsel did his due diligence appellant would have never knowingly, voluntarily, and intelligently pleaded guilty.

XIV.   Trial court abused its discretion and erred by never finding appellant guilty of any offense that he was charged with, yet still sentencing appellant to  seven years of state incarceration without finding of guilt, violating his due process of law and equal protection of law.

XV.   Trial court abused its discretion and erred by sentencing appellant without any calculations from the presentence report, nor stating specific reasons for the sentence imposed, violating his constitutional right to due process and equal protection of law and fair and impartial trial along with cruel and unusual punishment.

XVI.   Trial court abused its discretion when it refused to respond to appellant's affidavit to dismiss indictment ignoring appellant's valid motion

without granting an evidentiary hearing, violating appellant's due process of law and equal protection of law.

XVII. Trial court abused its discretion by engaging in a sham legal process committing fraud upon the court when it verified the identity and conviction of appellant based solely on evidence obtained by virtue of officer's illegal stop, arrest and search and seizure on Interstate Highway 77, thereby violating appellant's State of Ohio Constitutional rights under Article I, Section 14 and United States Constitutional Amendment IV, rights to due process and equal protection of law and cruel and unusual punishment.